UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

Nº 11-cv-1463 (JFB) (ETB)
_____

DEWAYNE BUTLER,

Plaintiff,

VERSUS

SUFFOLK COUNTY CORRECTIONAL FACILITY MEDICAL CENTER, SUFFOLK COUNTY
CORRECTIONAL FACILITY MEDICAL DEPARTMENT,
DR. JOHN DOE, AND DR. JANE DOE,

Defendants.
_____

**MEMORANDUM AND ORDER**
March 22, 2013
_____

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiff DeWayne Butler ("plaintiff" or "Butler") brings this action against Suffolk County Correctional Facility Medical Center ("S.C.C.F. Medical Center"), Suffolk County Correctional Facility Medical Department ("S.C.C.F. Medical Department"), Dr. John Doe and Dr. Jane Doe ("medical defendants") (collectively, "defendants" or "County")[1]

alleging a denial of medical care under 42 U.S.C. § 1983 during his period of incarceration in the Suffolk County jail.[2] In

---

[1] Defendants note in their motion for summary judgment that the Suffolk County Correctional Facility ("S.C.C.F.") is not an entity that may be subject to suit, and therefore, defendants construe the claim as one against the County of Suffolk. (*See* Defs.' Mot. for Summ. J. at 1.) The Court does the same. *See Filippone v. Suffolk Cnty. Corr. Facility*, No. 11-cv-4937(SJF)(AKT), 2012 WL 527050, at *2 (E.D.N.Y. Feb. 14, 2012) ("'[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued.'" (quoting *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002)); *see also Franko v. Suffolk Cnty. Corr. Facility*, No. 10-cv-5449(JS)(WDW), 2011 WL 1004891, at *1 (E.D.N.Y. Mar. 17, 2011) (holding that the Suffolk County Correctional Facility could not be subject to suit because of its status as an administrative arm of the County of Suffolk).

[2] In his opposition motion to defendants' motion for summary judgment, plaintiff states that his claim is also against "Dr. Vincent Geraci" and "Nurse Practitioner [ ] Paula Mecagni." (*See* Pl.'s Opp'n Mot. to Summ. J. at 1.) Neither of these parties was originally named in this action, nor has plaintiff properly amended his complaint to add these parties. However, even if the Court were to permit such amendment, it would be futile, for the reasons set forth *infra*, as plaintiff cannot show that any alleged denial of medical care constituted a constitutional violation.

particular, plaintiff claims that his constitutional rights were violated when he was not prescribed the medication that he believed he should have received for treatment of a gunshot wound suffered prior to his period of imprisonment.

Defendants move for summary judgment on the grounds that plaintiff fails to show a County custom or policy that caused a violation of plaintiff's civil rights, and therefore, plaintiff lacks the requisite proof to establish a *Monell* claim. For the following reasons, the Court grants defendants' motion for summary judgment.

I. BACKGROUND

A. Factual Background

The Court derives the facts below from the parties' affidavits and exhibits, and from defendants' Rule 56.1 Statement of Facts. A court considering a motion for summary judgment shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2005). Unless otherwise noted, where defendants' 56.1 Statement is cited, that fact is undisputed or the opposing party has pointed to no evidence in the record to contradict it.

1. A Shooting, Imprisonment, and Medical Treatment

Plaintiff states that he was shot approximately twelve times on August 5, 2010. (Compl. at 4; Pl.'s Opp'n Mot. to Summ. J. ("Pl.'s Opp'n") at 1.)[3] During at least the month of August 2010, plaintiff underwent several periods of hospitalization due to the injuries he sustained during the shooting. (Pl.'s Opp'n at 1 (noting several dates when plaintiff was in the hospital for treatments associated with his gunshot wound injuries).) Plaintiff states that, as a result of the shooting, he had to take several types of medications to help ameliorate the pain. (Compl. at 4; Pl.'s Opp'n at 1-2.)

Matters allegedly did not improve for plaintiff with the start of the new year. On January 18, 2011, plaintiff was admitted to the S.C.C.F., at which time he underwent a medical screening and evaluation. (Def.'s 56.1 ¶ 1.)[4] On that same date, plaintiff was referred to the prison's Mental Health Unit and scheduled for a complete physical examination. (*Id.* ¶ 2.) Plaintiff was examined by the Mental Health Unit on January 19, 2011 (*id.* ¶ 3), and one month later, by the prison's Medical Unit, the latter of which conducted a physical examination of plaintiff on February 15, 2011 (*id.* ¶ 4). During his February 15 examination, plaintiff complained of pains from the shooting. (*Id.*) Medical personnel prescribed him prescription strength Motrin (ibuprofen), which he was instructed to take three times a day to help with the pain. (*Id.*) Examiners also scheduled regular blood pressure checks for plaintiff. (*Id.*)

The next day (February 16, 2011), plaintiff was again seen by the Correctional Facility's medical staff. (*Id.* ¶ 5.) It is not clear from the record precisely what type of medical treatment plaintiff received on this particular date; what is clear is that plaintiff was in fact treated. (*Id.* ¶ 6; *see also* Def.'s Mot. for Summ. J. Ex. C, Pre-trial Examination of DeWayne Butler ("Butler Examination") at 66:21-67:16, 68:15-18.) Plaintiff continued to be prescribed prescription strength Motrin on a daily basis

---

[3] All page numbers from the Complaint refer to those assigned by the ECF docketing system.

[4] Although defendants' Rule 56.1 statements contain specific citations to the record, the Court cites to the Rule 56.1 statements, rather than to the underlying citations.

through June 2011. (Def.'s Mot. for Summ. J. Ex. B, Aff. of Vincent Geraci ("Geraci Aff.") ¶ 6.) Plaintiff did not agree with the doctors' Motrin recommendation, believing instead that he should have received a stronger pain medication. (Def.'s 56.1 ¶ 7; *see also* Compl. at 4; Butler Examination at 75:23 – 76:4.)

Plaintiff subsequently was examined on multiple occasions during his period of incarceration. On February 24, 2011, he was prescribed an Albuterol inhaler for his asthma condition. (Geraci Aff. ¶ 7.) On March 10, 2011, plaintiff visited an outside oral surgeon for treatment of an unstated-in-the-record dental condition; on returning to the facility, he was screened by the medical unit and prescribed the antibiotic, Amoxicillin. (Def.'s 56.1 ¶ 8.) His prescription for thrice-daily Motrin remained intact at this time. (*Id.*)

On April 25, 2011, Dr. Geraci, along with nurse practitioner Paula Mecagni, examined plaintiff to address several complaints he had made concerning his health. (*Id.* ¶ 9.) In particular, plaintiff had complained of not receiving medication to help treat his gunshot wounds from the August 2010 shooting. (*Id.*) According to the uncontroverted record, plaintiff entered the office without any apparent difficulty, sat up on the exam table, and stated, "I'm fine," when asked how he was feeling. (*Id.* ¶¶ 9-10; *see also* Geraci Aff. ¶ 9.) The doctors requested plaintiff's medical records relating to the shooting incident; plaintiff stated that they were upstairs and that he had not brought them with him because no one had asked for them. (Def.'s 56.1 ¶ 10.) The doctors inquired further, upon which plaintiff became upset, conceding that the medical staff had asked for the records. (*Id.*) Due to plaintiff's rising temper, medical personnel had plaintiff escorted out of the unit at that time. (*Id.*)

Dr. Geraci notes that, during the April 25, 2011 examination, plaintiff also complained of multiple hernias in his abdomen. (*Id.* ¶ 11; *see also* Geraci Aff. ¶ 10.) Dr. Geraci concluded that plaintiff exhibited "no gross signs of hernias." (Def.'s 56.1 ¶ 11.) Medical personnel placed plaintiff on "mobility observation" to determine if he was having any difficulty in moving around on account of his alleged injury. (*Id.*) Correction officers observed plaintiff from April 26, 2011 through April 29, 2011; officers noted no problems with plaintiff's movement abilities during that time. (*Id.* ¶ 12.) On April 26, 2011, the facility requested plaintiff's medical records concerning treatment received prior to entering prison. (*Id.* ¶ 13.)

Following a complaint of gastroesophageal reflux, plaintiff was examined by medical personnel on May 18, 2011. (*Id.* ¶ 14.) Plaintiff additionally complained of back pain in the morning; he agreed to try Motrin to ease the pain. (*Id.*) Plaintiff claims that he continues to suffer from pain associated with his gunshot wounds and that he needs stronger medication to ameliorate the pain. (Compl. at 4.)

B. Procedural History

Plaintiff filed his action on March 3, 2011, along with a motion to proceed *in forma pauperis*. The Court granted plaintiff's *in forma pauperis* motion on April 11, 2011. On June 2, 2011, defendants submitted their answer to the complaint. On August 6, 2012, defendants moved for summary judgment.[5] On September 13,

---

[5] Included with their summary judgment motion was a "Notice to Pro Se Litigants Opposing Summary Judgment," the text of which explains the means by which a pro se litigant may oppose a summary judgment. Defendants filed an affidavit of service

3

2012, defendants submitted their reply in support of their motion for summary judgment, along with a letter that plaintiff had delivered to defendants, dated August 29, 2012, in which plaintiff opposed defendants' motion for summary judgment.[6] The Court has fully considered the arguments and submissions of the parties.

## II. STANDARD OF REVIEW

The standard for summary judgment is well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party shoulders the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

Because this case concerns a plaintiff who is proceeding *pro se*, the Court must "construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s]." *Weixel v. Bd. of Educ.*

---

with their submission, confirming service of this notice upon plaintiff.

[6] Plaintiff did not otherwise file an opposition to defendants' motion for summary judgment with the Court. The Court, however, considers plaintiff's opposition letter, filed by defendants, to be such and addresses it accordingly.

4

of N.Y.C., 287 F.3d 138, 146 (2d Cir. 2002) (alterations in original). While a court will give a *pro se* litigant's pleadings wide latitude, "bald assertion[s]," completely unsupported by evidence, will not be sufficient to defeat a motion for summary judgment. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Thus, in such instance, a non-moving *pro se* party will be required to "bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 101 (2d Cir. 1997) (citation and internal quotation marks omitted).

### III. DISCUSSION

#### A. Denial of Medical Care

Plaintiff's claim, in essence, is that his constitutional rights were violated when, during his various treatments at S.C.C.F.'s medical units, he was not prescribed the type of pain medications that he believed he should have received. (*See* Compl. at 4.) Stated differently, plaintiff asserts a Section 1983 claim alleging that defendants acted with deliberate indifference to a serious medical need. For the following reasons, the Court grants summary judgment to defendants as to plaintiff's Section 1983 claim.

To prevail on a claim under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws, (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

The Court, construing plaintiff's complaint and additional filings broadly, first addresses any potential Section 1983 claim that plaintiff might have against two individuals who technically are not parties to this action, but whom plaintiff names in his opposition to summary judgment motion as persons against whom he is filing a lawuit: Dr. Vincent Geraci ("Dr. Geraci") and Nurse Practitioner Paula Mecagni ("Nurse Mecagni").[7,8] The Court understands plaintiff to be asserting a claim against these individuals, despite his failure to properly add them to his action or to amend his complaint.[9]

It is clear from the record that at least Dr. Geraci is employed by the Suffolk County Department of Health Services. (*See* Geraci Aff. ¶ 1 ("I am a physician licensed to practice medicine in the State of New York and am currently employed by the Suffolk County Department of Health Services as the Director of the Medical Unit at the Suffolk County Jail in Riverhead.").) The Court, construing plaintiff's claims broadly, assumes the same as to Nurse Mecagni, as she works with Dr. Geraci at the S.C.C.F. facility. Thus, both Dr. Geraci and Nurse Mecagni constitute state actors who were acting under color of state law at the time of the underlying allegations. The

---

[7] Although plaintiff's specific wording is that he is "filling [sic] this Law suit *on behalf of* Dr, Vincent Geraci and Nurse Practitioner Ms, Paula Mecagni and the Suffolk county Correctional Facility" (Pl.'s Opp'n Mot. at 1 (emphasis added)), the Court understands plaintiff to mean, based on the context of his remaining arguments and his already pending pleadings against S.C.C.F., that he is filing a lawsuit *against* these individuals.

[8] The issue of *Monell* liability against the named County defendants will be addressed *supra*.

[9] The Court also notes that in his original complaint, plaintiff named a "Dr. John Doe" and "Dr. Jane Doe" as defendants. The Court interprets Dr. Geraci and Nurse Mecagni as the doctors whom plaintiff was unable to identify at the time he filed his complaint.

5

question presented, therefore, is this: whether these medical practitioners' alleged conduct in response to plaintiff's claimed health condition was unreasonable, *i.e.*, did Dr. Geraci and Nurse Mecagni know that plaintiff faced a substantial risk of serious harm, and did they disregard such risk by failing to take reasonable measures to abate it? For the following reasons, the Court concludes that, even construing the facts liberally and favorably towards the plaintiff, plaintiff cannot establish a claim for deliberate indifference to a serious medical need on the part of Dr. Geraci and Nurse Mecagni.

1.  Legal Standard

"Claims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009). The Court analyzes plaintiff's deliberate indifference claim under Eighth Amendment jurisprudence.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment," and therefore, "states a cause of action under § 1983." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (citation and internal quotation marks omitted). As the Second Circuit has explained,

> [t]he Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody. Moreover, under 42 U.S.C. § 1983, prison officials are liable for harm incurred by an inmate if the officials acted with "deliberate indifference" to the safety of the inmate. However, to state a cognizable section 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice.

*Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (internal citations omitted). Within this framework, "[d]eliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment, in violation of the Eighth Amendment, as made applicable to the states through the Fourteenth Amendment." *Bellotto v. Cnty. of Orange*, 248 F. App'x 232, 236 (2d Cir. 2007). Deliberate indifference exists "when an official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). Where an official exhibits deliberate indifference to a known injury, he or she may be held liable under Section 1983. *See Ortiz v. Goord*, 276 F. App'x 97, 98 (2d Cir. 2008).

The deliberate indifference standard consists of both objective and subjective elements: (1) "the alleged deprivation must be, in objective terms, 'sufficiently serious,'" *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) "the charged official must act with a sufficiently culpable state of mind," *id.*; *see also Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006) (elaborating on two-part test and describing first prong as objective and second prong as subjective); *Hayes*, 84 F.3d at 620 (stating that deliberate indifference test requires a plaintiff to show both an objective "substantial risk of serious

6

harm," *and* that "prison officials possessed sufficient culpable intent"). Thus, in order for a plaintiff to establish a deliberate indifference claim, he must satisfy both the objective and subjective prongs. *See generally Allah v. Michael*, No. 11-1475-pr, 2012 WL 6633977, at *1 (2d Cir. Dec. 21, 2012) (affirming district court's dismissal of plaintiff's deliberate indifference claim where plaintiff failed to satisfy objective prong of the test); *Goris v. Breslin*, 402 F. App'x 582, 584 (2d Cir. 2010) (affirming district court's grant of summary judgment to defendants where plaintiff failed to satisfy objective prong of deliberate indifference claim); *Skates v. Vanbockstaele*, No. 11 Civ. 4414(LAP)(MHD), 2013 WL 658253, at *4-5 (S.D.N.Y. Feb. 25, 2013) (granting motion to dismiss where plaintiff could satisfy neither the objective nor the subjective prongs to his deliberate indifference claim).

2. Application

Plaintiff alleges that members of S.C.C.F.'s medical staff were deliberately indifferent to his serious medical needs because they denied him adequate medical care when they prescribed him different medication (here, Motrin) than he believes he should have received.

a. Objective Element

As previously set forth, to determine whether a deprivation of medical care meets the objective prong, a plaintiff must show that "the alleged deprivation [was] . . . in objective terms, 'sufficiently serious.'" *Hathaway*, 37 F.3d at 66 (quoting *Wilson*, 501 U.S. at 298). That is, that the alleged "deprivation 'den[ied] the minimal civilized measure of life's necessities.'" *Branham v. Meachum*, 77 F.3d 626, 630-31 (2d Cir. 1996) (alteration in original) (quoting *Wilson*, 501 U.S. at 298). It is well-known that "medical conditions[] may be of varying severity," but "[t]he standard for Eighth Amendment violations contemplates 'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway*, 37 F.3d at 66).

There is no specific yardstick by which courts are to measure the seriousness of a prisoner's medical need. There are factors, however, that courts have referred to in making such assessment, including: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (quoting *Chance*, 143 F.3d at 702).

Reading the facts in the light most favorable to plaintiff, it is unclear whether plaintiff's condition – including pain arising from injuries sustained during a prior shooting – constitutes a serious medical need. The Court need not affirmatively resolve this issue, however. This is so because, as discussed *infra*, the uncontroverted evidence makes clear that plaintiff cannot satisfy the subjective prong to his deliberate indifference claim, even construing the evidence most favorably to plaintiff. *See Trammell v. Keane*, 338 F.3d 155, 162, 165-66 (2d Cir. 2003) (deliberate indifference claim properly dismissed where plaintiff failed to establish subjective prong); *see also Warren v. Purcell*, No. 03-Civ-8736(GEL), 2004 WL 1970642, at *8 (S.D.N.Y. Sept. 3, 2004) (where a plaintiff cannot establish the subjective prong to his deliberate indifference claim, the court need not resolve the issue of whether he has satisfied the objective prong and shown a serious medical need). For this reason, even if plaintiff's allegations were sufficient for

7

purposes of satisfying the objective prong, the fact that he cannot also show that Dr. Geraci and Nurse Mecagni acted with the requisite culpable state of mind requires the granting of summary judgment in favor of the medical practitioners here.

b.   Subjective Element

The second requirement for an Eighth Amendment violation asks whether a prison official acted with a "sufficiently culpable state of mind." *Salahuddin*, 467 F.3d at 280. This occurs when an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Stated differently, deliberate indifference requires a higher showing than simply "an inadvertent failure to provide adequate medical care" or "negligen[ce] in diagnosing or treating a medical condition." *Estelle*, 429 U.S. at 105-06.

Here, plaintiff was examined upon entrance into the prison, was subsequently scheduled for a complete physical examination, and received medical treatment whenever he requested it. (*See* Defs.' 56.1 ¶¶ 1-4, 6, 8-11, 14; *see also* Butler Examination at 66:21-67:16.) Plaintiff also makes clear that his contentions regarding his treatment are, most succinctly stated, that he thought he should have received medication stronger than simply Motrin. (*See* Butler Examination at 68:15-69:17.) In other words, plaintiff disagreed with his physicians as to the type of treatment he considered most appropriate for his condition.

However, "[i]t is well-established that mere disagreement over [ ] proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703. A "prisoner's right is to medical care – not the type or scope of medical care which he personally desires." *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864, 867 (2d Cir. 1970) (quoting *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968)) (internal quotation mark omitted); *see also Barrett v. Goldstein*, No. 07 CV 2483(RJD)(LB), 2009 WL 1873647, at *3 (E.D.N.Y. 2009) (stating that "mere disagreement with prison officials about what constitutes appropriate care does not state a claim cognizable under the Eighth Amendment"). Indeed, case law is very clear that a court's role in reviewing disputes concerning an inmate's medical treatment is "not [to] sit as a medical board of review. Where the dispute concerns not the absence of help, but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment, [a court] will not second guess the doctors.'" *Hathaway*, 37 F.3d at 70 (quoting *Sires v. Berman*, 834 F.2d 9, 13 (1st Cir. 1987)); *see also Madison v. Nesmith*, 06-CV-1488(NAM/DEP), 2009 WL 666398, at *9 (N.D.N.Y. Mar. 11, 2009) ("[T]he Eighth Amendment does not afford prisoners a right to medical treatment of their choosing; the question of what diagnostic techniques and treatments should be administered to an inmate is a 'classic example of a matter for medical judgment' and accordingly, prison medical personnel are vested with broad discretion to determine what method of care and treatment to provide to their patients." (quoting *Estelle*, 429 U.S. at 107)).

Because plaintiff is clearly alleging mere negligence in treatment and disputes what in essence was a medical-judgment-call by his treating physicians, the Court will not attempt to don the doctor's white coat in place of its judicial black robe. In other

8

words, given the uncontroverted evidence in the record in this case (including the evidence of the treatment and examinations plaintiff did receive), no rational jury could conclude that the medical staff was deliberately indifferent to his medical needs. Other courts addressing similar factual circumstances have reached the same conclusion. *See Hill v. Cavanagh*, 223 F. App'x 595, 596 (9th Cir. 2007) (concluding that state prison officials were not deliberately indifferent to a state prisoner's medical needs, including alleged hypertension and back and knee pains, where medical staff monitored prisoner and prescribed Motrin for his pains); *Mack v. Wilkinson*, 90 F. App'x 866, 867-68 (6th Cir. 2004) (affirming district court's grant of summary judgment on deliberate indifference claim to medical defendants where medical staff treated plaintiff-inmate's back pain with Motrin and took necessary steps to have plaintiff supplied with a substitute prescription while his Motrin was refilled); *Drayton v. Ozmint*, 10-cv-2079, 2011 WL 7395092, at *9 (D.S.C. Dec. 28, 2011) (stating that "[w]hile Plaintiff may have desired stronger pain medication prior to when he actually received it, such disagreement with his treatment plan does not constitute deliberate indifference," and noting that "Plaintiff may disagree with the medical care he received, but such disagreement alone is insufficient to establish a claim for deliberate indifference"); *Giamboi v. Prison Health Servs., Inc.*, 11-cv-159, 2011 WL 5322769, at *7 (M.D.Pa. June 2, 2011) ("The plaintiff's allegations that the defendants . . . treated him with Motrin raises an inference that they exercised their professional judgment not that they were deliberately indifferent[;] [t]hat their judgment turned out to be wrong does not change that."); *Lewis v. Naku*, 650 F. Supp. 2d 1090, 1093 (E.D.Cal. 2009) (where defendant doctor prescribed Motrin for plaintiff-inmate's ailments, court noted that "[w]hether [d]efendant made the correct diagnosis is an issue of negligence and not deliberate indifference"); *Ortiz v. Makram*, 96-CIV-3285 AGS, 2000 WL 1876667, at *10 (S.D.N.Y. Dec. 21, 2000) ("It is not for this Court to determine whether [plaintiff's] condition warranted Percocet, or whether, in light of his condition and his history of drug addition . . . [plaintiff] should have received Motrin. It is sufficient that this case . . . involved a consideration of the inmate's overall condition and a medical determination as to the appropriate treatment. [Plaintiff's] disagreement with that judgment does not render it constitutionally infirm.").

Any claims against plaintiff's treating physicians, named as Dr. John Doe and Dr. Jane Doe, do not survive summary judgment. Leave to replead, which the Court, in its discretion, may grant, is also denied as it is clear that any attempt to do so would be futile given that no amendment could cure the fact that there is insufficient evidence for any claim against these defendants to survive summary judgment. *See* Fed. R. Civ. P. 15(a).

### B.  Municipal Policy or Custom

As previously set forth, the only defendants named in the complaint (aside from the individual members of the medical staff addressed *supra*) are S.C.C.F. Medical Center and S.C.C.F. Medical Department, which the Court construes to be a claim against the County of Suffolk. *See supra* n.1; *see also Franko*, 2011 WL 1004891, at *1. For the following reasons, the Court similarly concludes that plaintiff fails to establish Section 1983 liability as to the County.

1. Legal Standard

As set forth above, a plaintiff bringing a Section 1983 claim must satisfy two factors, namely, (1) that he sustained a deprivation of rights, privileges, or immunities secured by the Constitution and its laws, (2) by a person acting under the color of state law. 42 U.S.C. § 1983. As to municipal entities, the Supreme Court has explained that a municipal entity may be held liable under Section 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citing *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)). Instead, discriminatory practices of city officials that are "persistent and widespread" can be "so permanent and well settled as to constitute a custom or usage with the force of law, and thereby generate municipal liability." *Sorlucco*, 971 F.2d at 870-71 (citing *Monell*, 436 U.S. at 691) (internal quotation marks omitted). Moreover, a policy, custom, or practice of the entity may be inferred where "'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" *Patterson v. Cnty. of Oneida, NY*, 375 F.3d 206, 226 (2d Cir. 2004) (quoting *Kern*, 93 F.3d at 44).

2. Application

Here, plaintiff proffers no evidence, nor does he allege any facts showing that the S.C.C.F. Medical Unit and S.C.C.F. Medical Department engaged in customs or policies that caused a constitutional violation. Indeed, the record here is bereft of any evidentiary support from which the Court might find a violation of plaintiff's rights. Plaintiff concedes that he received medical treatment whenever requested, and also admits that he did in fact receive medication for his alleged injuries. (*See* Defs.' 56.1 ¶¶ 1-4, 6, 8-11, 14; *see also* Butler Examination at 66:21-67:16.) Plaintiff's real source of contention is that he was not of the same opinion as his doctors regarding the appropriate antidote for his ailments.

Although the Court must draw "all reasonable factual inferences in the light most favorable" to plaintiff, *see DeFabio v. E. Hampton Union Free Sch. Dist.*, 623 F.3d 71, 74 (2d Cir. 2010), this requirement is not to be interpreted as somehow lightening a litigant's load. Stated differently, a party opposing summary judgment still must support its arguments by "citing to particular parts of materials in the record, including depositions, documents, . . . affidavits or declarations" to establish a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *see also Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (stating that the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986))).

Plaintiff has not done so. The parties have proceeded through discovery, and the uncontroverted evidence in the record does not reflect, nor does plaintiff direct the Court to any evidence or facts suggesting, that the County has a policy or custom that caused a violation of plaintiff's constitutional rights. "[U]nsupported allegations do not create a material issue of fact." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). In the absence of any "concrete particulars" supporting plaintiff's allegation of a *Monell* custom and/or policy, plaintiff

cannot establish Section 1983 liability on the part of the County. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)) (internal quotation marks omitted); *see also BellSouth Telecomms. Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (stating that it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts"). The Court accordingly grants defendants' motion for summary judgment as to plaintiff's *Monell* claim.

IV. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment. The Clerk of the Court shall close the case and enter judgment accordingly.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge


Dated: March 22, 2013
       Central Islip, NY


\* \* \*

Plaintiff DeWayne Butler is *pro se*. Defendants are represented by Brian C. Mitchell, Suffolk County Department of Law, 100 Veterans Memorial Highway, P.O. Box 6100, Hauppauge, NY 11788.